Case 2:14-cv-01896-CLS   Document 12   Filed 07/27/15   Page 1 of 12            FILED
                                                                        2015 Jul-27 PM 03:36
                                                                        U.S. DISTRICT COURT
                                                                            N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NEPHETERIA DELSHAWN HORN, ) ) ) Claimant, ) ) vs. ) ) CAROLYN W. COLVIN, Acting ) Commissioner, Social Security ) Administration, ) ) Defendant. ) | Civil Action No. 2:14-CV-1896-CLS |

**MEMORANDUM OPINION AND ORDER**

Claimant, Nepheteria Delshawn Horn, commenced this action on October 6, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinion of her treating physician, and failed to recontact that physician for an additional assessment, and that new evidence submitted for the first time to the Appeals Council warrants remand. Upon review of the record, the court concludes those contentions are not correct.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d)(1). Social Security regulations also provide that, in considering what weight to give *any* medical

opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. John D. Morgan, claimant's treating rheumatologist, stated in an October 19, 2011 office note that "[i]t appears that largely she has not been working because of the difficult generalized national economic conditions but it appears unlikely that she would have the physical vigor to do work if there were a job available to her."[1] Dr. Morgan completed a "Physical Capacities Evaluation" form on December 27, 2011. He indicated that claimant could occasionally lift and/or carry ten pounds. She could sit for a total of four hours, and stand and walk (combined) for a total of two hours, during an eight-hour work day. She did not need an assistive device to ambulate. She could never climb, balance, bend, or stoop. She could occasionally

---

[1] Tr. 369 (alteration supplied).

push, pull, perform gross and fine manipulation, and reach.  She could operate motor vehicles, but she could not work around hazardous machinery, dust, allergens, or fumes.[2]

Dr. Roberts also completed a "Clinical Assessment of Pain" form the same date.  He indicated that pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that physical activity would greatly increase pain to such a degree as to cause distraction from or abandonment of tasks, and that claimant would experience some side effects from her medication, but not to such a degree as to create serious problems in most instances.  Claimant did have an underlying condition consistent with the pain she experienced.[3]

Finally, Dr. Roberts completed a "Clinical Assessment of Fatigue/Weakness" form.  He indicated that fatigue and weakness were present in claimant's life to such an extent as to negatively affect adequate performance of daily activities or work.  Physical activity would greatly increase her fatigue and weakness to such a degree as to cause total abandonment of tasks.  Claimant would experience some side effects from her medication, but not to such a degree as to create serious problems in most instances.  Claimant did have an underlying condition consistent with the fatigue and

---

[2] Tr. 354.
[3] Tr. 356-57.

weakness she experienced.[4]

The ALJ afforded little weight to Dr. Morgan's assessments, reasoning that the assessments were

> rendered in November 2011, shortly after the claimant's diagnosis. As noted previously, the claimant's symptoms improved over a span of several months and her systematic lupus erythematosus was declared to be in remission in August 2012 . . . . Limited weight has also been placed in Dr. Morgan's comments that the claimant may not have the physical vigor [for] work, this comment was made in October 2011, only a few months after her diagnosis. As discussed throughout, the claimant's condition improved significantly within the 12 months following her diagnosis. Further, Dr. Morgan also stated that the claimant was likely out of work due to the difficult economic realities of an economy in recession.[5]

Those were are all permissible considerations. Even so, claimant contends that they were not supported by the record. It cannot be denied that the ALJ erroneously stated the date of Dr. Morgan's assessments as being *November* of 2011, as the record clearly reveals that the assessments were generated in *December* of 2011. That mistake is not material, however, because the logic employed by the ALJ still is the same. Claimant still could have been adjusting to her lupus medications in December of 2011.

The ALJ also stated that claimant's *systematic lupus erythematosus* was in

---

[4] Tr. 358-59.

[5] Tr. 29-30 (alteration supplied, citation to the record omitted).

remission in August of 2012. The record on which that statement was based came from Dr. John R. Brouillette, claimant's nephrologist, on August 30, 2012. Dr. Brouillette's assessment and plan included the following statement: "Delightful 27-year-old female with *lupus nephritis was in remission* status post delivery by Cesarean approximately two weeks ago with some mild leg swelling. Does not appear to have ongoing nephropathy or relapse at this time of her glomerulonephritis."[6] Claimant asserts that the ALJ's confusion of systematic lupus erythematosus with lupus nephritis is significant, because "[l]upus is the medical condition and lupus nephritis is a symptom and result of lupus."[7] That is a true statement, but the record does not actually support the underlying premise that

---

[6] Tr. 382 (emphasis supplied).

[7] Doc. no. 10 (claimant's brief), at 10 (alteration supplied). One leading medical dictionary has defined "systematic lupus erythematosus" as

> a chronic, remitting, relapsing, inflammatory, often febrile multisystemic disorder of connective tissue, acute or insidious in onset, characterized principally by involvement of the skin. . . , joints, kidneys, and serosal membranes. It is of unknown etiology, but it is thought to represent a failure of regulatory mechanisms of the autoimmune system, as suggested by the high level of numerous autoantibodies against nuclear and cytoplasmic cellular components. It is marked by a wide variety of abnormalities, including . . . nephritis . . . .

*Dorland's Illustrated Medical Dictionary* 1072 (30th ed. 2003). "Nephritis" is defined as "inflammation of the kidney; a focal or diffuse proliferative or destructive process that may involve the glomerulus, tubule, or interstitial renal tissue." *Id.* at 1229. More specifically, "lupus nephritis" is defined as "glomerulonephritis (diffuse, focal, or membranous) associated with systemic lupus erythematosus . . . ." *Id.* at 1230. "Glomerulonephritis" is defined as "nephritis accompanied by inflammation of the capillary loops in the renal glomeruli." *Id.* at 779. A "glomerulus" is "a tuft or cluster." *Id.* at 780.

6

claimant's lupus itself was not in remission. Dr. Brouillette's August 2012 notes are not 100% clear on that subject. Absent any punctuation, it s impossible to determine whether the "remission" referred to the "delightful 27-year-old female," or to the lupus nephritis. Dr. Brouillette also gave the following assessment on March 8, 2012: "27-year-old African-American female with lupus, history of acute glomerulonephritis proliferative type as of 05/07/2011. In remission for less than one calendar year, now pregnant."[8] That record also could reasonably be read as stating that *either* the lupus *or* the nephritis was in remission. Accordingly, it cannot be said that the ALJ's interpretation of the notes as referring to the *lupus* being in remission were not supported by substantial evidence. Regardless, it appears that nephritis was the primary symptom claimant experienced as a result of her lupus, or at least that it was the primary symptom that concerned her physicians. Thus, stating that plaintiff's nephritis was in remission is actually the functional equivalent of stating that the lupus itself was in remission.

Finally, it is important to note that the mere existence of an impairment, or of a medical condition, does not determine disability. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on her ability to perform substantial gainful work activities. *See* 20 C.F.R. § 416.905(a) (defining

---

[8] Tr. 391.

a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)). Here, there is no indication that either the lupus or the nephritis caused any disabling functional limitations.

Based on all of the foregoing considerations, the ALJ's decision to afford only little weight to Dr. Morgan's opinion was supported by substantial evidence.

The ALJ also did not err by failing to recontact Dr. Morgan for clarification of his opinion. According to claimant, "[e]ven if the ALJ finds Dr. Morgan's opinion inconsistent, she is not free to dismiss this opinion out of hand."[9] Claimant relies on Social Security Ruling 96-5p, which states, in pertinent part, that "[f]or treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and *the bases for such opinions are not clear to us*." SSR 96-5p (alteration and emphasis supplied). Here, there is no indication that the ALJ found

---

[9] Doc. no. 10 (claimant's brief), at 12 (alteration supplied).

Dr. Morgan's assessment to be unclear, or that she could not discern the basis for that opinion. There was therefore no need for the ALJ to recontact Dr. Morgan for any further explanation. *See Shaw v. Astrue,* 392 F. App'x 684, 688-89 (11th Cir. 2010).

Recent amendments to the regulations have made it clear, moreover, that recontacting a physician for clarification is not mandatory, but within the ALJ's discretion. The relevant regulatory provision provides that, if the evidence in the record is insufficient or inconsistent, the ALJ "*may* need to take additional actions," including:

> (a) If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.
>
> (b) If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.
>
> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. *We might not take all of the actions listed below*. We will consider any additional evidence we receive together with the evidence we already have.

> (1) We *may* recontact your treating physician, psychologist, or other medical source. We *may* choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. *If* we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> (2) We *may* request additional existing records (see § 404.1512);
>
> (3) We *may* ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
>
> (4) We *may* ask you or others for more information.
>
> (d) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.

20 CFR § 416.920b (emphasis supplied). The ALJ did not err by exercising her discretion to *not* recontact Dr. Morgan and, instead, make a decision based on the information in the record.

Claimant's final argument is that the case should be remanded for consideration of evidence submitted for the first time to the Appeals Council. Dr. Morgan submitted a "Statement of Incapacitating Condition" form on August 8, 2013, several months after the ALJ's March 27, 2013 decision. Dr. Morgan stated that, due to claimant's systemic lupus erythematosus and lupus nephritis, she would experience

"very impaired endurance, air hunger, loss of adaptability to changing conditions and impairments in problem solving."[10]  Claimant's condition would "substantially reduce[] [her] ability to work" for more than six months.[11]  The Appeals Council considered that statement but nonetheless denied claimant's request for review.[12]

The Appeals Council's decision was consistent with Eleventh Circuit authority providing that:

> When a claimant submits new evidence to the AC [*i.e.,* Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[ *v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)].  Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67.  *The new evidence must relate back to the time period on or before the date of the ALJ's decision.*  20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations and emphasis supplied).

Here, Dr. Morgan's additional report was generated more than four months after the ALJ's decision, and it was an assessment of claimant's condition on that date.  There is no reason to believe that Dr. Morgan's report related back to the time

---

[10] Tr. 405.

[11] *Id.* (alterations supplied).

[12] Tr. 1-4.

period *before* the ALJ's decision. Moreover, the additional report was generated almost a year and a half after Dr. Morgan's last treatment note from March 1, 2012.[13] Thus, there were no medical records, other than the conclusory statement from Dr. Morgan, documenting a decline in claimant's condition after the ALJ's decision. The Appeals Council was justified in refusing to consider the report.

In summary, the court finds that the Commissioner's decision was supported by substantial evidence and in accordance with applicable law. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 27th day of July, 2015.

_____
United States District Judge

---

[13] *See* Tr. 376-77.